197 So.2d 238 (1967)
Louie HOOKS
v.
STATE of Mississippi.
No. 44355.
Supreme Court of Mississippi.
March 27, 1967.
Lawrence D. Arrington, Hattiesburg, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice:
The appellant was indicted, tried and convicted in the Circuit Court of Forrest *239 County, Mississippi, for the crime of enticing a child under the age of fourteen years, for the felonious purpose of "concubinage or marriage." He was sentenced to serve a term of six years in the State Penitentiary, and from this sentence and judgment he has appealed to this Court. Appellant has pointed out several grounds of error alleged to have occurred in the trial court, but in view of the decision in this case, we deem it necessary to discuss only one of the assignments of error.
The testimony of the State, at most, tends to show that the defendant, Louie Hooks, forty-six years of age, was employed as a drummer in a band at Truckers Lounge; that the young lady here involved was employed at a nearby cafe. She had been employed by the cafe owner after having told him that she was seventeen years of age. She was six feet tall and weighed 129 pounds. She was, in fact, only thirteen years of age. The witness testified  after much cajolery on the part of the prosecuting attorney  that the defendant took the young lady here involved from the place where she worked and took her to his quarters above the Truckers Lounge and spent the night with her on three occasions. They had sexual relations, and it was said that the defendant later promised to marry her. The mother of the young lady took a written statement over to Columbia Training School and had her sign it. The written statement refuted the former verbal statement given to the district attorney. On cross-examination, she testified that the things she said in the written statement were true, which, in effect, denied all that she had said in her testimony involving the guilt of the defendant.
At the conclusion of the testimony for the State and again at the conclusion of all of the evidence, the defendant made a motion for a directed verdict of acquittal. When this motion was overruled, defendant submitted a written instruction to the court in which he requested that the court find him "not guilty."
We have reached the conclusion that under the testimony offered in the trial of this case, the court should have directed a verdict in favor of the defendant, and that the charge here brought against him should be dismissed.
We feel that, in passing, we should comment upon the method by which the prosecution obtained the reluctant admission of the young lady here involved that she had spent three nights in the living quarters of the defendant. Without detailing the testimony, it is sufficient to point out that after the young lady was called as a witness for the State of Mississippi, her testimony was not as strong against the defendant as was desired by the prosecution. The prosecuting attorney pleaded surprise and was permitted to cross-examine the witness, over the objection of the defendant, as if she had been called by the defendant as his witness. This cross-examination was very unusual, for example: The district attorney asked the young lady: "(A)re you going to sit here now and face these twelve men and this Court under your oath, having previously sworn on two occasions?", and she made no answer. He then asked her: "Come on now, Diane. Face your Lord now and tell the truth, like you did that night over in that jail when you looked him right straight in the eye and said, Louie you know it's true. Didn't you say that? A. Yes, sir. * * * Q. Even though you say he had promised to marry you; and he did promise to marry you, didn't he, Louie Hooks did, didn't he? A. I don't know. Q. Young Lady, did Louie Hooks promise to marry you? (She made no answer.) Q. You see, it just breaks out all over your face. Come on now, Diane, I'm waiting for your answer. A. Yes, sir."
In the case of Hall v. State, 250 Miss. 253, 264, 165 So.2d 345, 350 (1964), we pointed out that "Witnesses may be cross-examined or impeached by the party calling them when they prove to be hostile. (Citing cases.) * * * But" we said, "a proper foundation must be laid in order to *240 impeach a witness. The party must first show that the evidence as given, has taken him by surprise and that the witness is hostile. The witness may then be asked if he has made contradictory statements out of court, the times, places and circumstances of the statements being described to him in detail. Underhill's Criminal Evidence, Vol. 1, Fifth Edition, p. 547."
In Bove v. State, 185 Miss. 547, 188 So. 557 (1939), we pointed out that it was error for the prosecution to cross-examine a witness introduced by the State unless there was a showing that the prosecuting attorney had been taken by surprise. In that case, however, no objection was made by the defendant to the testimony.
In the instant case there was no showing, in the absence of the jury, that the witness had changed her testimony. The district attorney simply made a motion to be permitted to cross-examine the witness and the court sustained the motion. This was error. After the witness had admitted that she had told the district attorney certain facts, made in the presence of another witness, this witness was also introduced and he testified that she told him the facts she admitted she told the district attorney. No objection was made to this testimony, and we point it out only for the purpose of showing that the testimony as a whole was weak and unsatisfactory upon the issue involved.
At this point we also point out that no motion was made to require the State to elect as to whether or not it proposed to prove the defendant guilty of enticing the child away for the unlawful purpose of "concubinage" or "marriage," but in either case, we are of the opinion that the evidence fails to sustain the burden of showing that the defendant was guilty of the charge laid in the indictment.
The defendant was prosecuted under Mississippi Code Annotated section 2051 (1956) which is in the following language:
"Every person who shall maliciously, wilfully, or fraudulently lead, take, carry away, decoy or entice away, any child under the age of fourteen years, with intent to detain or conceal such child from its parents, guardian, or other person having lawful charge of such child, or for the purpose of prostitution, concubinage, or marriage, shall, on conviction, be imprisoned in the penitentiary not exceeding ten years, or imprisoned in the county jail not more than one year, or fined not more than one thousand dollars, or both."
The issue before the trial court under the charge in the indictment was not whether the defendant contributed to the delinquency of a minor, or committed adultery, or seduced the minor, but rather whether or not he led or enticed away the thirteen year old child named in the indictment for the purpose of "concubinage or marriage." Marriage is a legal state of wedlock or union of two persons of opposite sex associated together as husband and wife for the purpose of establishing a family. On the other hand, concubinage is also a state of cohabitation of persons of opposite sex, living together as husband and wife, having sexual relations, without being married. It is a social condition of cohabitation, without legal marriage. It is said in 15 A C.J.S. 330 (1967):
"(T)hat the word `concubinage' describes a status resembling marriage, and does not denote mere acts of fornication or adultery, however frequent or even habitual. It has also been said that there can be no concubinage without a concubine.
"As used in statutes the term has been interpreted in both a broad and restricted sense; thus it has been held to include any form of lewd or illicit intercourse, a single act of intercourse being sufficient. In other jurisdictions, however, it has been held that a single act of intercourse is not sufficient to constitute concubinage."
*241 Although as a general proposition, it may be said that concubinage is cohabiting or living together as married persons, a man and woman, who are not legally married, nevertheless sexual intercourse is not essential to the commission of the offense of taking the girl away for the purpose of concubinage. It is only evidence of the character of the cohabitation. The crime is committed when a person takes a child or entices her away for the purpose of "marriage", "concubinage" or "prostitution", and this is true although the marriage is never performed, and there is no cohabitation or prostitution. State v. Dusin, 125 Kan. 400, 264 P. 1043 (1928); State v. Tucker, 72 Kan. 481, 84 P. 126 (1905); State v. Overstreet, 43 Kan. 299, 23 P. 572 (1890); Purvis v. Purvis, 162 So. 239 (La. 1935); Texada v. Spence, 166 La. 1020, 118 So. 120, 62 A.L.R. 281 (1928); People v. Cummons, 56 Mich. 544, 23 N.W. 215 (1885); State v. Baldwin, 214 Mo. 290, 113 S.W. 1123 (1908); Scott v. State, 85 Okl. Cr. 213, 186 P.2d 336 (1947).
In the instant case, the evidence does not show that the defendant enticed the child away for the purpose of cohabiting with her as his concubine, although he did have sexual intercourse with her. She left each morning before daylight and it is obvious they did not intend to live together as married people. The mere fact that she finally admitted that the defendant promised to marry her is not evidence that he took her away for the purpose of marriage. The evidence shows that he did not take her away for the purpose of marriage but rather for the purpose of sexual intercourse.
From a careful examination of the record in this case, we have reached the conclusion that the State failed to meet the burden of establishing the crime charged against the defendant as laid in the indictment, and for that reason we hold that the motion for a directed verdict in favor of the defendant should have been sustained.
The judgment of the lower court will be reversed and defendant discharged.
Reversed and defendant discharged.
ETHRIDGE, C.J., and BRADY, PATTERSON and SMITH, JJ., concur.